ARKANSAS BAR ASSOCIATION *v.* UNION NATIONAL BANK.

5-484                                          273 S. W. 2d 408

Substituted for Original Opinion Delivered Oct. 11, 1954.

*Julius C. Acchione* and *U. A. Gentry,* for appellant.

*Moore, Burrow, Chowning & Mitchell,* for appellee.

WARD, J.  This suit was instituted by the Bar Association of Arkansas, acting through its proper committee [joined by the local Bar Association of Pulaski County] to enjoin the Union National Bank of Little Rock from engaging in the unauthorized practice of law.

After hearing testimony relative to certain activities on the part of the Bank alleged to constitute unlawful practice, the Chancellor sustained appellant's contentions as to certain activities and rejected their contentions as to certain others.  This appeal seeks to reverse the decree as to the activities held by the Chancellor not to constitute unauthorized practice.

Appellee is a banking corporation organized under the National Bank Act and is authorized thereunder [12 U. S. C. A., § 248] to act as personal representative of decedents' estates, of minors' and incompetents' persons and estates, to act as trustee of property held in trust, and otherwise to act generally in a fiduciary capacity. The Bank has two full time employees who are licensed attorneys and who look after all trust and estate matters as indicated above, and, generally speaking, these attorneys prepare all related orders, petitions, and other instruments, and make all necessary presentations of the same in the Probate and Chancery Courts.

Although considerable testimony was introduced before the Chancellor it is not brought forward in the record.  In lieu thereof both sides have agreed that the narrative statement [copied in the record] of one of the Bank's attorneys fairly represents the factual situation with which we are dealing.  In addition to the decree, which is shown in the record, the Chancellor made a somewhat exhaustive finding of facts and law, designated as his "Opinion" which likewise is in the record, and there is no contention that the factual situation contained in the "Opinion" is not correct.

The complaint sets forth numerous activities on the part of the Bank incident to the handling [through its attorneys] of trust and estate matters, and the Chancellor, in his "Opinion," considered these activities separately and concluded which activities amounted to unlawful practice of law and which did not. The "Opinion" groups the aforesaid activities under three classifications, as follows: (1) Drafting of wills; (2) Drafting of trust instruments; and, (3) Preparation of pleadings and instruments and making appearance in Probate and Chancery Courts.

Since the Chancellor based some of his conclusions on a premise or rule with which we do not agree, we likewise do not agree with some conclusions reached. However, before evaluating the respective contentions, we deem it expedient and helpful to announce certain general conclusions which we have reached, and which, we think, will help to clarify the points of disagreement between the parties hereto. Some of the general conclusions set out below are not controverted but others, as will be indicated, have been arrived at after careful consideration of decisions in other jurisdictions.

*One. Corporations Cannot Practice Law.* Section 1, Act 182 of 1929, now appearing as Ark. Stats., § 25-205, reads as follows:

"It shall be unlawful for any corporation or voluntary association to practice or appear as an attorney at law for any person in any court in this State or before any judicial body, or to make it a business to practice as an attorney at law for any person in any of the said courts or to hold itself out to the public as being entitled to practice law, or to tender or furnish legal services or advice, or to furnish attorneys or counsel, or to render legal services of any kind in actions or proceedings of any nature or in any other way or manner, or in any other manner to assume to be entitled to practice law or to assume or advertise the title of lawyer or attorney, attorney at law, or equivalent terms in any language in such manner as to convey the impression that it is en-

titled to practice law, or to furnish legal advice, service or counsel, or to advertise that that either alone or together with or by or through any person, whether a duly and regularly admitted attorney at law, or not, it has, owns, conducts or maintains a law office or any office for the practice of law, or for furnishing legal advise, services or counsel.'' Nor can the corporation do indirectly what it is forbidden to do directly.

''The fact that any officer, trustee, director, agent, or employee shall be a duly and regularly admitted attorney at law shall not be held to permit or allow any such corporation or voluntary association to do the acts prohibited herein nor shall such fact be a defense upon the trial of any of the persons mentioned herein for a violation of the provisions of this act.'' (Section 25-208).

*Two. An Individual Can Practice Law for Himself.* It is generally conceded that an individual who is not a licensed attorney can appear in the courts and engage in what is commonly conceded to be practicing law provided he does so for himself and in connection with his own business. A corporation may also represent itself in connection with its own business or affairs in the courts of this state provided it does so through a licensed attorney. This is specifically provided in § 5 of the above mentioned Act now appearing as Ark. Stats., § 25-209. It further appears clear to us that under the above statute the attorney representing a corporation may be a full time employee of the bank.

*Three. A Trustee or Personal Representative Does Not Act for Himself.* It is our conclusion, after reviewing many decisions of other jurisdictions and from a study of our own statutes, that an individual or a corporation such as the appellee here is not looking after its own business when, acting as an administrator, an executor, guardian or in a similar fiduciary capacity, it undertakes to use the processes of the courts of this state in administering and settling the affairs of its *cestui que trust.* Stated specifically we hold that a person who is not a licensed attorney and who is acting as an adminis-

trator, executor or guardian cannot practice law in matters relating to his trusteeship on the theory that he is practicing for himself. Again we hold specifically that the appellee corporation although acting through an employee, who is a licensed attorney, cannot practice law in the Probate and Chancery Courts on the theory that it is handling its own business. The very term itself it seems to us implies that a trustee or personal representative is not acting for himself and in connection with his own business affairs but on the contrary is acting for others who ordinarily would be the beneficiaries.

Appellee, in support of the view contrary to the one we have expressed above, cites authorities which it is contended hold that trustees and personal representatives can practice law in connection with trust affairs on the ground that they are practicing for themselves. Among the cases relied on by appellee in support of its view are *Judd, et al.* v. *City Trust and Savings Bank, et al.*, 133 Ohio St. 81, 12 N. E. 2d 288; *Detroit Bar Ass'n, et al.* v. *Union Guardian Trust Co.*, 282 Mich. 216, 276 N. W. 365; *Groninger, et al.* v. *Fletcher Trust Co.*, 220 Ind. 202, 41 N. E. 2d 140; and, *Merrick* v. *American Security and Trust Co.*, 107 F. 2d 271. We have examined the holdings in these cases along with the statutes and reasoning upon which the conclusions were based, and it is sufficient here to say, particularly in view of what we later say, that we find nothing which binds us to adopt appellee's view in this connection.

The view which we have taken in this matter has been approved in other jurisdictions. The issue before us was discussed in *In Re Otterness,* 181 Minn. 254, 232 N. W. 318, 73 A. L. R. 1319, where the Court used this language:

"The probate courts of this state are courts of record with exclusive original jurisdiction over the estates of deceased persons and persons under guardianship. Conducting proceedings in those courts constitutes practice of law."

Again the Court said:

"An executor, administrator, or guardian, as such, has no right to conduct probate proceedings, except in matters where his personal rights as representative are concerned, as, for instance, where his account as representative is in question, or misconduct is charged against him as representative."

In *People Ex Rel. Committee on Grievances of the Colorado Bar Association* v. *Denver Clearing House Banks,* 99 Col. 50, 59 P. 2d 468, where a similar issue was under consideration the Court said: "Corporations shall not practice law. The practice of drafting wills, living trust indentures and life insurance trust agreements is the practice of law and counsel for executors and trustees named therein may not act as counsel for their testators or creators."

*Four. Invoking the Process of a Court of Record Amounts to Practicing Law.* It has been said in many opinions that it is not possible to give a definition of what constitutes practicing law that is satisfactory and all inclusive, and we make no such attempt. We do hold however that when one appears before a court of record for the purpose of transacting business with the court in connection with any pending litigation or when any person seeks to invoke the processes of the court in any matter pending before it, that person is engaging in the practice of law. To us this conclusion is obvious. Courts are constituted for the purpose of interpreting and administering the laws passed by the law making body and the rules announced by the judiciary, and they must necessarily be governed in their operation by rules of procedure. Attorneys are officers of the court and are able by special training and practice to know the law and rules of procedure, and are thereby in position to render a service to the court. Therefore anyone who assumes the role of assisting the court in its process or invokes the use of its mechanism is considered to be engaged in the practice of law. The cases of *Judd, supra, Detroit Bar Ass'n, et al., supra,* along with other decisions, **are**

in conformity with this view. In *Grand Rapids Bar Ass'n, et al.* v. *Denkema,* 290 Mich. 56, 287 N. W. 377, the Court, quoting from another authority, used this language: "In a case in court, determination of the steps to be taken and control of procedure and proceedings to enforce the remedy are exclusive functions of an attorney-at-law, where a party does not appear in his own person."

We make it clear at this point that we are not holding that other activities aside from appearing in court do not constitute practicing law. It is uniformly held that many activities, such as writing and interpreting wills, contracts, trust agreements and the giving of legal advice in general, constitute practicing law.

*Five. The Practice of Law is Regulated by the Judiciary.* Amendment No. 28 to our Constitution reads: "The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys." In the case of *People Ex Rel. Chicago Bar Ass'n* v. *Goodman,* 366 Ill. 346, 8 N. E. 2d 941, 111 A. L. R. 1, in considering this question, the Court stated:

"The power to regulate and define the practice of law is a prerogative of the judicial department as one of the three divisions of the government created by Article 3 of our Constitution."

As a correlation to the above pronouncement it follows that in this state the judiciary would also have the right to say what constitutes the practice of law.

In many jurisdictions, as in this state, the judiciary has on occasions apparently given approval to certain enactments by the legislative body, but these enactments are considered to be in aid of the judicial prerogative to regulate the practice of law and not to be in derogation thereof.

In the light of and with the aid of the above mentioned pronouncements we now proceed to consider the holdings and the decree of the lower court in the case under consideration. First, however, we affirm that we

are in entire agreement with the Chancellor when he stated that the reputation of the Union National Bank is beyond question and that its attorneys referred to herein are recognized as outstanding attorneys in the field of probate and trust law, and that the past record of the Bank as disclosed by the evidence indicates that all trust matters entrusted to its care by the public have been and will be in safe and competent hands.

In the Chancellor's. "Opinion" he enumerated the specific activities which were alleged to constitute the unlawful practice of law. They are: "Drafting and preparation of trust agreements; the giving of advice as to the law in connection with estates and trusts; the preparation and filing of pleadings, motions, orders and other instruments in Probate and Chancery Courts and the appearing in those courts in connection with estates, guardianships and trusts; the drafting and preparation of contracts, leases, notes, mortgages, deeds, bills of sale and other papers in connection with the handling of property comprising a part of fiduciary estates; advertising itself publicly as being engaged in the practice of law." Following this it was stated by the Chancellor that all of the enumerated activities are generally held to constitute the practice of law "if they were performed by one not authorized to practice law for the benefit of another."

If it is conceded that the Chancellor stated all of the questioned activities on the part of the Bank and if we agree with the Chancellor that they amounted to "practicing law," then this opinion need not be further extended in view of our pronouncement number "Three" above. However, we deem it pertinent to take note of a matter mentioned in the "Opinion" but not in the decree. The Chancellor found that appellee regularly advertised in newspapers and by other means its services as trustee, executor, etc., where it was specifically recommended to the readers that the public consult with their attorneys though the Bank did not hold itself out as being authorized to perform legal services in general. The Chancellor further found that the advertisements were of such a nature that the general public might get the impression

that the Bank was actually advertising its legal services in the matters of administration and trusts and that the attorneys for appellee had admitted that it was most difficult to avoid giving advice as to the law when they consulted with customers of the Bank who came to them in response to said advertisements, although said attorneys were careful not to do so. The Chancellor refused to enjoin appellee from so advertising, and we think he was right. As we interpret the Chancellor's finding regarding the contents of the advertisements [which do not appear in the record], appellee purported to advise people to consult with their own attorneys—not with appellee's attorneys. Appellant complains that appellee "holds itself out to the public as being ready, willing and able to perform" enumerated acts which do constitute unauthorized practice of law, and asked that appellee be restrained from doing so. From the record before us we cannot say the advertisements substantiate this allegation. However, in the public interest and in the hope of forestalling similar controversies in the future, we deem it advisable to re-emphasize, in the language of Ark. Stats., § 25-205, copied above, that appellee is not permitted to ". . . advertise the title of lawyer or attorney, attorney at law, or equivalent terms in any language in such a manner as to convey the impression that it is entitled to practice law, or to furnish legal advice, service or counsel, or to advertise that either alone or together with or by or through any person, whether a duly and regularly admitted attorney at law, or not, it has, owns, conducts or maintains a law office or any office for the practice of law, or for furnishing legal advice, services or counsel."

The decree from which this appeal comes permanently restrains appellee from:

"1. The drafting, re-drafting or modification of wills or other testamentary instruments."

"2. The preparing of motions, pleadings or other instruments to be filed in court and the appearing in court on behalf of any beneficiary of a fiduciary estate

any co-trustee, co-executor, co-administrator or other person other than the defendant itself, either in its individual or in some fiduciary capacity.''

''3. The advising of any persons as to matters of law other than the defendant itself, either in its individual or in some fiduciary capacity.''

We are in accord with this portion of the decree and it is therefore affirmed.

The decree refused to restrain appellee from probating ''. . . a will when it has been named executor therein, the preparation of notices, *inventories, accounts,* motions, precedent for orders, and all other pleadings and instruments which are required to be filed in probate court or chancery court, or which become necessary or advisable in the administration of an estate or trust, whether the defendant be acting as executor, administrator, guardian for an incompetent, or otherwise in a trust relationship.'' We are not in agreement with this portion of the decree and it is hereby reversed, except as it applies to ''inventories'' and ''accounts,'' which words we emphasized above. Appellee, of course, has a right to use its books and facilities to compile data necessary to the drafting of said instruments and to actually prepare and draft the same. It is the presentation of said instruments in court and the invocation of the court's processes thereon and not the preparation thereof that constitutes the unauthorized practice of law.

Accordingly the decree of the trial court is affirmed in part and reversed in part.

The Chief Justice dissents in part.